UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| VIGILANT INSURANCE CO., a/s/o<br>WILLIAMS & CONNOLLY, L.L.P,<br>    Plaintiff,<br>  v.<br>EEMAX, INC. and PVI INDUSTRIES,<br>L.L.C.,<br>    Defendants.<br><br>EEMAX, INC.,<br>    Third-Party Plaintiff,<br>  v.<br>GENERAL ELECTRIC COMPANY *et al.*,<br>    Third-Party Defendants. | Civil Action No.  02-1825 (JMF) |

**MEMORANDUM ORDER**

This case is before the court upon consent of the parties to trial before a United States Magistrate Judge. On February 4, 2005, I ordered the parties to brief the question of whether this court has jurisdiction over the third-party claims because the primary action has settled and diversity is lacking between the parties that remain in this case.

The primary action involved a suit by plaintiff Vigilant Insurance Company against defendants EEMAX, Inc. ("EEMAX") and PVI Industries, LLC for damages caused by the malfunction of an EEMAX water heater at the Williams & Connelly office building. In the third-party action, brought by third-party plaintiff EEMAX against third-party defendants General Electric Company *et al.* ("GE"), EEMAX blames GE's plastic resin for the alleged failure of other EEMAX water heaters manufactured between 1988 and 2003.

GE manufactures and sells plastic resin, including the resin at issue in this case, in pellet

form. Years ago, GE sold thousands of pounds of pellets to Mohawk Tool & Die Manufacturing Company ("Mohawk"), which converted the pellets into molded parts. EEMAX then purchased the molded resin from Mohawk and incorporated it into its water heaters. According to EEMAX, many of these water heaters have failed to perform properly, and EEMAX alleges that the failures occurred because GE's resin was unsuitable for EEMAX's hot water application.

      EEMAX cites two pieces of evidence to support its claims: (1) a letter dated October 25, 1988 from GE sales specialist, Patty O'Beirne ("O'Beirne"), to EEMAX's chief engineer at the time ("O'Beirne Letter"); and (2) two meetings involving EEMAX's current lead engineer, Edward Fabrizio ("Fabrizio"), and GE's customer representative, Frank Becker ("Becker"), that took place in 2000 and 2001. In the O'Beirne Letter, a GE sales specialist represents to EEMAX that GE's Noryl resin is especially noted for its hydrolitic stability, discusses the resin's performance in water and heated environments, and comments that the Noryl resin's low water absorption rate contributes to its dimensional stability. Twelve years after the O'Beirne Letter was sent to EEMAX, after learning that EEMAX's insurance policy was going to be canceled because of an increase in property damage claims, Fabrizio investigated the cause of the malfunctions and concluded that the problems were caused by leaks in the plastic housing bodies of the EEMAX water heaters. In an attempt to correct the leaking problem, Fabrizio met with a molder from Mohawk and GE's customer representative, Becker. EEMAX claims that Becker reassured EEMAX that GE's Noryl resin was appropriate for use in EEMAX's hot water applications and suggested ways–other than replacing the resin–to try to solve the problem. Based on this evidence, EEMAX brings claims against GE for breach of contract, indemnity, contribution, breach of warranty, fraud, misrepresentation, and negligence.

**I.     DISCUSSION**

    **A.     Legal Standards**

Under federal statute, a district court may decline to exercise supplemental jurisdiction over a claim if:

> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).[1] The court has considerable discretion in determining whether to retain or decline supplemental jurisdiction. In making this determination, the court must weigh the following factors: (1) judicial economy, (2) convenience, (3) fairness, and (4) comity. Edmondson & Gallagher v. Alban Towers Tenants Ass'n, 48 F.3d 1260, 1266 (D.C. Cir. 1995) (citing United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966)).[2] "In the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the [supplemental] jurisdiction doctrine–judicial economy, convenience, fairness, and comity–will point toward declining to exercise jurisdiction over the remaining state-law claims." Griffin v. Acacia Life Ins. Co.,151 F. Supp. 2d 78, 81 (D.D.C. 2001) (quoting Carnegie-Mellon

---

[1] All references to the United States Code are to the electronic versions that appear in Westlaw or Lexis.

[2] Even though Gibbs was decided before the enactment of the statute, this Circuit has held that 28 U.S.C. § 1367 "essentially codifies [Gibbs]." Women Prisoners of District of Columbia Dept. of Corrections v. District of Columbia, 93 F.3d 910, 921 (D.C. Cir. 1996) (quoting Edmondson, 48 F.3d at 1266).

Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988)).  See also Gibbs, 383 U.S. at 726.  These guidelines reflect the important underlying principle that federal courts should avoid entertaining decisions of state law when no federal issues remain.  Gibbs, 383 U.S. at 726 ("Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law.").

**B.    Analysis**

The present case implicates two of the three specific bases for declining to exercise supplemental jurisdiction under § 1367(c), and the court finds each of these bases to be independently sufficient.  As discussed below, the remaining claims raise complex issues of Connecticut law, and the court will decline the exercise of jurisdiction under both 28 U.S.C. § 1367(c)(1) and 28 U.S.C. § 1367(c)(3).

1.    *Complex Issues of Connecticut Law*

The state law claims that remain in this case are: breach of contract, indemnity, contribution, breach of warranty, fraud, misrepresentation, and negligence.  At first glance, these claims seem quite ordinary and straightforward.  But, considering the specific facts of this case–such as the relationship between GE, EEMAX, and Mohawk (a company that has never been a party to this action)–it is apparent that the legal issues are not so clear-cut.  In addition, a review of Connecticut law indicates that there is an absence of controlling authority and a level of complexity here that the parties have not addressed in their briefs.

For example, the deciding court must determine whether the evidence cited by EEMAX–a letter in which GE touts the properties of its resin and meetings, conducted twelve years later, in which a GE representative allegedly commented that the resin was a decent

selection–is sufficient to find an implied contract between the parties. Additionally, in a case such as this one, where GE allegedly entered a contract to select or provide guidance in selecting a resin but sold that resin not to EEMAX but to another company, is that a sale of goods or a contract for services, and does the common law or only the Uniform Commercial Code ("UCC") apply? As one Connecticut court noted, there are two lines of cases–and no clear authority–regarding how and whether to determine whether a hybrid transaction is a sale of goods or services. Martisek v. Showron, No. CV980354780, 2003 WL 21716577, at *2-3 (Conn. Super. Ct. July 9, 2003). According to one line of cases, the court looks to whether the dominant factor or essence of the transaction is the sale of materials or services. Id. at *2 (citing Myrtle Mills Assocs. v. Bethel Roofing, Inc., 10 Conn. L. Rptr. 49, 50 (Conn. Super. Ct. 1993); Epstein v. Giannattasio, 25 Conn. Sup. 109 (Conn. C.P. 1963); Gulash v. Stylarama, 33 Conn. Supp. 108, 111 (Conn. C.P. 1975)). In another line of cases, however, Connecticut courts have noted "the absence of a decision of the Connecticut Supreme Court limiting the effect of a breach of warranty to the goods themselves as opposed to services directly connected to such goods, and in view of the ever increasing policy towards the imposition of liability upon a manufacturer for any conduct on his part causing damage to another," they have adopted a "more liberal trend" and have found, under certain circumstances, that the sale of a good and the provision of services "should be considered as a unified whole." Id. at *3 (quoting Paint Prods. Co. v. AA-1 Steel Equip. Co., 35 Conn. Supp. 52, 53-54 (Conn. Sup. Ct. 1977) and citing Brown v. Triangle Pacific Corp., 32 Conn. L. Rptr. 467 (Conn. Sup. Ct. 2002)). Thus, there is no one method for determining whether the transaction is one for goods or services or both. In addition, the issue of whether the common law or the UCC applies takes on added significance in light of the

following trend in the case law: where a claim for economic damages[3] arises out of the commercial sale of goods governed by the UCC, plaintiff's remedies are limited only to those available under the Code, but where the claim is not governed by the UCC, plaintiffs may also pursue tort claims, such as negligent misrepresentation and fraud. See, e.g., Flagg Energy Dev. Corp. v. Gen. Motors Corp., 244 Conn. 126 (Conn. 1998); Metcoff v. NCT Group, Inc., No. X04CV040184701S, 2005 WL 288769 (Conn. Sup. Ct. Jan. 10, 2005); Santoro, Inc. v. A.H. Harris & Sons, Inc., 38 Conn. L. Rptr. 4 (Conn. Sup. Ct. 2004) (following Flagg).

Another area of complexity stems from the fact that EEMAX never had a privity relationship with GE. A review of the Connecticut case law indicates that, in some situations, courts have decided to dispense with the UCC's privity requirement, especially when no other alternative remedies are available or when plaintiff has brought suit for personal injury. As the district court in the District of Connecticut has stated:

> [A]fter reviewing the recent Connecticut cases, this Court is not convinced that these decisions etch the privity requirement in stone.  Certain decisions do appear to require privity in a contractual warranty action.  Nonetheless, such rulings are uniformly based on the availability of some alternative remedy as to which privity is unnecessary. . . .  Thus, it is arguable that what defendant perceives as a firm commitment to privity in Connecticut is . . . nothing more than an application of the doctrine limited to the existence of alternative remedies wherein privity is not required.

Utica Mutual Ins. Co. v. Denwat Corp., 778 F.Supp. 592, 595-96 (D. Conn. 1991) (quoting Quadrini v. Sikorski Aircraft Div., 505 F. Supp. 1049, 1051 (D. Conn. 1981)). The Quadrini

---

[3] EEMAX has alleged the following damages: damages caused by increased overhead costs, damages for cover, attorney's fees, damages caused by warranty claims by EEMAX's customers, damages caused by increased insurance premiums, monies paid in settlement of other claims, lost profits, and injury to reputation. Third Amended Complaint ¶ 23.

court also noted: "In none of the recent Connecticut cases would imposing a privity requirement have meant the dismissal of all warranty counts, but only that the plaintiffs would pursue their claims through the available alternative tort routes." Quadrini, 505 F. Supp. at 1052.  In a personal injury case, the District Court for the District of Connecticut commented that "giant steps toward the inevitable demise of the privity requirement have been taken in Connecticut. The heights attained in this field by the legislature and judiciary in Connecticut should not now serve as pinnacles from which this Court backslides toward resuscitation of the privity doctrine." Chairaluce v. Stanley Warner Mgmt. Corp., 236 F.Supp. 385, 387 (D. Conn. 1964).  However, in this case, there is no allegation of personal injury, and it is unclear whether remedies other than those sought under the UCC will be available, especially given the limited evidence on which EEMAX relies to prove its common law breach of contract, negligence, and fraud and misrepresentation claims.  Therefore, it is unclear whether, in this case, a Connecticut court would continue this trend toward dispensing with the privity requirement.  This is especially true given recent case law emanating from a Connecticut state court in which the court refused to extend the exception to the UCC privity requirement because "policy arguments relating to commercial predictability and limitations of liability encompassed within the legislatively enacted UCC should trump judicially devised concepts intended to create a forum for every conceivable injury or loss." United Technologies Corp. v. Saren Engineering, Inc., 33 Conn. L. Rptr. 127 (Conn. Sup. Ct. 2002) (distinguishing cases in which courts dispensed with the privity requirement because plaintiffs sought damages for personal injury, not economic loss).  In addition, one lower court ruled that, because the legislature has carved out commercial losses between commercial parties for treatment only under the UCC, plaintiffs who are not in privity

with the product sellers cannot maintain warranty actions under the UCC. See Bosek v. Valley Transit Dist., 10 Conn. L. Rptr. 503 (Conn. Sup. Ct. 1993).  Because the courts have voiced such strong statements both in favor of and against maintaining the privity requirement in UCC warranty actions, and because there is a "dearth of caselaw" regarding this issue, see Pro Con, Inc. v. Coastal Wall, 37 Conn. L. Rptr. 875, 876 (Conn. Super. Ct. 2004), this unsettled area of the law should be resolved by courts in Connecticut.[4]

Finally, and perhaps most importantly, resolution of these issues may have serious long-term consequences for commercial transactions in the state of Connecticut.  Thus, the proper forum for resolution of these claims is the Connecticut state court system.

2.   *Fairness, Convenience, and Judicial Economy*

As for the other factors that must be considered in determining whether to retain or decline jurisdiction under 28 U.S.C. § 1367(c), some point in favor of retaining jurisdiction, but none can overcome the crucial interest in comity and having state courts decide issues of developing state law.  For example, GE argues that fairness points in favor of retaining jurisdiction because EEMAX selected this forum for its third-party claim, but now argues, late in the litigation, that this court should decline jurisdiction.  While it is unfortunate that the jurisdictional issue did not come to the court's attention until the summary judgment motion was briefed, the court will not fault either party, nor will it conclude that starting the case anew works more of an unfairness on one party rather than the other.  In fact, fairness points in the direction

---

[4] In addition, it must be noted that there is an additional wrinkle to the privity issue in this case.  Mohawk, the party that was in privity with GE for the sale of the resin, was not only an intermediary; it also modified GE's product (by converting the resin from pellet to molded form) before selling it, in turn, to EEMAX.

of declining jurisdiction because, given the complex issues involved in this case, both parties deserve to litigate this case in Connecticut, where they will be able to procure "a surer-footed reading of applicable law." Gibbs, 383 U.S. at 726.

As for convenience, this factor has little impact on the court's analysis because no one jurisdiction is more convenient than any other.[5]

Finally, in terms of judicial economy, it is certainly regrettable that resolution of the case will be delayed and the case will start anew because this court is already familiar with the record and the parties have invested considerable resources in litigating this case in federal court. But, these considerations are trumped by the fact that the complex issues raised by this lawsuit ought to be decided by a Connecticut court, not a federal district court sitting in the District of Columbia.

I must note that other courts have decided to retain jurisdiction when the cases were in a procedural posture similar to the case at bar. However, these courts also determined that the applicable state law was straightforward and that no novel, unsettled, or difficult issues of state law remained in the case. See, e.g., Doddy v. Oxy USA, Inc., 101 F.3d 448, 456 (5th Cir. 1996); Timm v. Mead Corp., 32 F.3d 273, 277 (7th Cir. 1994); Door Systems, Inc. v. Overhead Door Systems, Inc., 905 F. Supp. 492, 497-98 (N.D. Ill. 1995). On the other hand, courts that have dismissed state law claims once the main claims have been dismissed have cited, in support of their decisions, the fact that difficult issues of state law remained. See, e.g., Edmondson, 48 F.3d at 1266; Brown v. Gino Morena Enters., 44 F. Supp. 2d 41, 53 (D.D.C. 1999); Kimsey v.

---

[5] Two key witnesses reside in Connecticut, while two reside in Virginia. Counsel, on the other hand, are located in Texas, Virginia, New York, and the District of Columbia.

Snap-On Tools Corp., 752 F. Supp. 693, 695 (W.D.N.C. 1990) (finding that, because the issues remaining after dismissal of the federal claims involved state questions between residents of the same state, the interests of justice would be best served by the matters being remanded to the appropriate state courts).  In addition, this Circuit has cautioned against reaching out to decide unsettled issues of state law when all federal claims have been dismissed before trial and has stated that "a federal court should be reluctant to retain pendent jurisdiction over a question for which state jurisprudence gives inadequate guidance." Women Prisoners, 93 F.3d at 922 (quoting Fin. Gen. Bankshares, Inc. v. Metzger, 680 F.2d 768, 776 (D.C. Cir. 1982)).

      For all of these reasons, this court will decline the exercise of supplemental jurisdiction. Accordingly, it is, hereby, **ORDERED** that this case is **DISMISSED without prejudice**.

_____
JOHN M. FACCIOLA
UNITED STATES MAGISTRATE JUDGE

Dated: